**SO ORDERED.**

**SIGNED this 15 day of May, 2018.**

_Stephani W. Humrickhouse_
**Stephani W. Humrickhouse
United States Bankruptcy Judge**

___

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILMINGTON DIVISION

IN RE:

DAVID DUNN MULLANEY                     CASE NO. 17-02594-5-SWH
ELISE HUMPHREYS MULLANEY                CHAPTER 11

___

DAVID DUNN MULLANEY and
ELISE HUMPHREYS MULLANEY,

    PLAINTIFFS,                          ADV. PRO. NO. 17-00039-5-SWH

v.

BANK OF AMERICA, N.A. and
CITIMORTGAGE, INC.

    DEFENDANTS.

ORDER DENYING PLAINTIFFS' MOTION TO DISMISS IN PART
AND DEFERRING REMAINING RULINGS

The matter before the court is the motion to strike defenses and dismiss counterclaims filed by the Plaintiffs on August 31, 2017, Dkt. 10 (the "Motion"). A response in opposition was filed by the Defendants on September 21, 2017, Dkt. 12. Both parties filed supplemental pleadings and memoranda of law, Dkts. 21 and 22, and the court conducted a hearing on January 10, 2018 in Wilmington, North Carolina. At the conclusion of the hearing, the court took the matter under

1

advisement. On March 28, 2018, the court entered an Order Denying Plaintiffs' Motion to Dismiss as to First Counterclaim and Deferring Remaining Rulings. This opinion sets forth the basis for the rulings made in that Order.

## BACKGROUND

David and Elise Mullaney (the "Plaintiffs" or "Debtors") purchased the real property located at 2109 Auburn Lane, Wilmington, North Carolina (the "Property") on May 5, 2006 funded by Wells Fargo, the loan for which was secured by a deed of trust on the Property. That loan was paid in full. A first promissory note (the "Note"), with ABN AMRO Mortgage Group ("ABN AMRO") as lender, was executed on May 22, 2006 in the principal amount of $527,500.00. As security for the Note, the Plaintiffs executed a Deed of Trust in favor of ABN AMRO, which is recorded in the New Hanover County Registry at Book 5025, Page 1656 (the "Deed of Trust") on May 23, 2006. The Plaintiffs' initials appear on pages one through eight of the Deed of Trust, and the Plaintiffs' signatures appear on page nine of the Deed of Trust. The acknowledgment of the Notary Public[1] contains the typewritten name of Mr. Mullaney, but does not contain the name of Mrs. Mullaney. The Notary Public otherwise completed all sections of the notary block and signed the notarization on the signature line. ABN AMRO assigned the Deed of Trust to CitiMortgage, Inc. (as successor by merger) on July 17, 2015 by Assignment of the Deed of Trust recorded on July 23, 2015 in the New Hanover County Registry. The Plaintiffs borrowed additional funds, evidenced by a promissory note, dated March 24, 2008, in the principal amount of $454,000 in favor of Citibank, N.A. and secured by a deed of trust on the Property, recorded in the New Hanover County Registry at Book 5300, Page 1230 on April 10, 2008.

---

[1] The Notary, Hyun Ah Park, is a Notary Public of Arlington, Virginia. Neither party has raised a choice of law issue, and the court has thus proceeded to review these issues under North Carolina law.

A. Mr. Mullaney's Individual Chapter 7

Mr. Mullaney filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on August 12, 2015, Case No. 15-04409-5-SWH. Mr. Mullaney listed ownership of the Property on Schedule A and listed Citibank N.A., represented by Bank of America, N.A., as the holder of a deed of trust on the Property securing a note with a balance of $453,410.72, as well as CitiMortgage, Inc. as a servicer of a loan secured by the Deed of Trust on the Property held by Bank of America, N.A. in the amount of $430,413.00. The CitiMortgage, Inc. Deed of Trust is at issue in the instant proceeding. Mr. Mullaney did not challenge the validity of the Deed of Trust in his chapter 7 case and CitiMortgage, Inc. did not file a claim in that case. CitiMortgage, Inc., however, did file a Motion for Relief from Stay and Motion for Adequate Protection on September 9, 2015, but withdrew its motion on November 9, 2015. Mr. Mullaney received a chapter 7 discharge on October 11, 2016, and the court entered a final decree in his chapter 7 case on February 14, 2017.

B. Mr. and Mrs. Mullaney's Joint Chapter 11

The Plaintiffs filed a joint voluntary petition for relief under chapter 11 of the Bankruptcy Code on May 26, 2017. The Plaintiffs listed joint tenancy by the entirety ownership of the Property and scheduled its present value as $849,700 in Schedule A/B. On Schedule D, the Plaintiffs listed CitiBank, N.A. and CitiMortgage, Inc. as creditors holding claims secured by the Property in respective amounts of $454,000 and $491,250.15. In describing the claim of CitiMortgage, Inc., the Plaintiffs noted that "[o]nly the male debtor signed the underlying promissory note; that obligation was discharged in male debtor's prior chapter 7." Citibank, N.A. filed a claim in the amount of $480,967.67 on September 19, 2017, Proof of Claim No. 4-1. Bank of America, N.A., as successor to Merrill Lynch Bank USA, and CitiMortgage, Inc.

3

(collectively, "Defendants") filed a claim in the amount of $501,267.36 on August 23, 2017, Proof of Claim No. 3-1.

C. Instant Adversary Proceeding

The Plaintiffs initiated the instant adversary proceeding on May 26, 2017. In their complaint, the Plaintiffs assert two causes of action: (1) avoidance of the Deed of Trust as a hypothetical judicial lien creditor pursuant to 11 U.S.C. § 544(a)(1) or (2) alternatively, avoidance of the Deed of Trust as a hypothetical bona fide purchaser pursuant to 11 U.S.C. § 544(a)(3). The Plaintiffs base their claims for relief on the lack of acknowledgment of the Deed of Trust as to Mrs. Mullaney. In an amended answer filed September 21, 2017, Dkt. 7, the Defendants allege four counterclaims in their answer, being: (1) quiet title and declaration of the Deed of Trust's validity; (2) reformation of the Deed of Trust; (3) imposition of a purchase money resulting trust; and (4) breach of warranty. In addition, Defendants raise five affirmative defenses: (1) estoppel and judicial estoppel (2) lack of standing; (3) estoppel, waiver, and ratification; (4) unconstitutionality of North Carolina General Statute § 39-9; and (5) common facts.

The Plaintiffs filed a Motion to Dismiss Counterclaims of Defendants and Motion to Strike Affirmative Defenses of Defendants and Memorandum in Support Thereof pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and a Motion to Strike Affirmative Defenses pursuant to Rule 12(f) on August 31, 2017, Dkt. 10[2]. The Plaintiffs filed a Supplement to their Motion to Dismiss Counterclaims of Defendants and Motion to Strike Affirmative Defenses of Defendants on January 2, 2018, Dkt. 21. The Defendants filed a Response and Memorandum of Law in Opposition to Motion to Dismiss and Motion to Strike on September 21, 2017, Dkt. 12 and a Supplement to Response and Memorandum of Law in Opposition to Motion to Dismiss and Motion to Strike on January 8, 2018, Dkt. 22.

---

[2] Federal Rules of Civil Procedure 12(b)–(i) and are made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7012(b).

**DISCUSSION**

Rule 12(b)(6) provides for the dismissal of any claim for relief in a pleading if such pleading fails to "state a claim upon which relief can be granted." As such, a motion to dismiss tests the legal sufficiency of a claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Plaintiffs assert that viewing the counterclaims, in the best light for the Defendants, they fail as a matter of law. Although the Defendants assert five separate counterclaims, for purposes of the motion to dismiss, the court need only consider the first one at this time, for if the motion is not allowed as to the counterclaim to quiet title and a declaration of the Deed of Trust's validity, it would be premature to consider either the motion to dismiss the other counterclaims or the motion to strike the affirmative defenses. Therefore, the court now turns to the threshold question, with reference to North Carolina state law: the legal effect of the omission of Mrs. Mullaney's name in the notarial acknowledgment on the validity of the Deed of Trust.

Plaintiffs contend that the Deed of Trust is subject to avoidance because the notary failed to note Mrs. Mullaneys' name in the acknowledgment and thus fails to comply with Article X, § 2(4) of the North Carolina Constitution and N.C. Gen. Stat. § 39-9. The Defendants assert that, despite the omission of Mrs. Mullaney's name, the Deed of Trust "is in substantial compliance" with the North Carolina Notary and Public Act, codified in Chapter 10B of the North Carolina General Statutes, and is therefore "valid as drafted/prepared."

The Defendants cite multiple provisions of the North Carolina Notary Public Act to argue that the Notary Public Act, read in its entirety, emphasizes that it is "substance, not form [that] controls validity." In particular, the Defendants cite N.C. Gen. Stat. § 10B-99(a), which states:

> In the absence of evidence of fraud on the part of the notary, or evidence of a knowing and deliberate violation of this Article by the notary, the courts shall grant a presumption of regularity to notarial acts so that those acts may be upheld, provided there has been substantial compliance with the law. Nothing in this

>Chapter modifies or repeals the common law doctrine of substantial compliance in effect on November 30, 2005.

N.C. GEN. STAT. § 10B-99(a).  See also *Freeman v. Morrison*, 214 N.C. 240, 199 S.E. 12 (1938) ("courts uniformly give to certificates of acknowledgment a liberal construction, in order to sustain them if the substance be found, and the statute has been substantially observed and followed." *Id.* at 242 (citations omitted)).

This court interpreted *Freeman* in a case similar to the instant proceeding in *SunTrust Bank v. AbdalQader (In re AbdalQader)*, Adv. Pro. No. 12-03661-8-SWH, 2013 WL 5354546 (Bankr. E.D.N.C. Sept. 23, 2013). In *Abdalqader*, the debtor, as sole owner of real property, executed a promissory note secured by a deed of trust in favor of SunTrust Bank. *Id.* at *1. While Mr. AbdalQader both admitted to signing the deed of trust and confirmed its execution, the notary public omitted his name, as the grantor, in the acknowledgment. *Id.* SunTrust Bank sought declaration of the deed of trust's validity and contended that the mere omission of Mr. AbdalQader's name in the acknowledgment did not impugn its validity. WL *2. This court, relying on *Freeman* and other North Carolina case law, found that "it is apparent that North Carolina courts would not find a properly executed and recorded deed of trust invalid based solely on the omission of the grantor's name from the notary's otherwise compliant acknowledgment." WL *6. The court went on to hold that

>In light of the clear statutory directive that technical defects, errors, and omissions in an acknowledgment do not, of themselves, render invalid the instrument to which they pertain, and given that the North Carolina courts apply a "liberal" view in assessing the significance and materiality of omissions in acknowledgments very similar to the one at issue in this case, the court concludes that the omission of Mr. AbdalQader's name in the notarial acknowledgment to the deed of trust does not affect the validity of the deed of trust.

*Id*. at *6. The Defendants urge that "the same reasoning and application of North Carolina law

6

apply" to the instant proceeding. However, there are both factual and legal differences between *AbdalQader* and this case.

First, in *AbdalQader*, only a single grantor executed the deed of trust, and the provided space for the grantor's name was left entirely blank. Here, the Plaintiffs hold the Property as tenants by the entirety, such that both Mr. and Mrs. Mullaney must have signed the deed of trust in order for the Defendants' lien to be valid, *see* N.C. Gen. Stat. § 39-13.6(a), and only one of the grantors' names is listed in the acknowledgment. Second, the debtor in *AbdalQader* admitted to the proper execution of the deed of trust, merely arguing that the lack of acknowledgment of the debtor invalidated the document. Here, Mrs. Mullaney alleges she does not recall execution of the Deed of Trust. Third, the deed of trust in *AbdalQader* was challenged solely on the basis of noncompliance with the North Carolina Notary Public Act, and here the Plaintiffs allege both other statutory defects and a constitutional defect that, in spite of the North Carolina Notary Public Act, render the Deed of Trust invalid.

The Plaintiffs contend that N.C. Const. Art. X, § 2(4), together with N.C. Gen. Stat. § 39-9, apply and render the Deed of Trust invalid. The constitutional provision states:

> (4) Conveyance of homestead. Nothing contained in this Article shall operate to prevent the owner of a homestead from disposing of it by deed, but no deed made by a married owner of a homestead shall be valid without the signature and acknowledgement of his or her spouse.

N.C. Const. art. X, § 2(4). Similarly, N.C. Gen. Stat. § 39-9 provides:

> When an instrument purports to be signed by a husband and wife the instrument may be ordered registered, if the acknowledgment of the husband is duly taken, but no such instrument shall be the act or deed of the wife *unless proven or acknowledged by her according to law*.

N.C. GEN. STAT. § 39-9 (emphasis added). The Plaintiffs contend that because Mrs. Mullaney's signature was not notarized, she has not "proven" or "acknowledged" the Deed of Trust in

7

accordance with either N.C. Const. Art. X, § 2(4) or N.C. Gen. Stat. § 39-9, such that the instrument is facially invalid and did not create an enforceable lien on the Property.

N.C. Const. Article X, § 2(4) is rarely invoked by North Carolina courts in the context of conveyance of a deed of trust. The provision is part of the North Carolina constitution's homestead exemption, which is intended to "surround the family home with certain protection against the demands of urgent creditors." *Williams v. Johnson*, 230 N.C. 338, 343 (1949). In addition, this is but one of Article X's provisions designed to "accord married women greater control over their property." *White v. White*, 312 N.C. 770, 774 (1985). By its terms, the provision requires the signature and acknowledgement of a married spouse in order to convey property by deed. North Carolina courts have historically held that a deed lacking signature is invalid. *See Whitkowsky v. Gitney*, 124 N.C. 437 (1899). However, there appears to be no case law applying this constitutional provision where a spouse's *acknowledgement* is lacking. Application of this provision in the instant proceeding, then, appears to be one of first impression.

Turning to N.C. Gen. Stat. § 39-9, it is similarly true that North Carolina courts have rarely interpreted this statute. The provision is cited in only three cases, with the last in a decision published in 1900, and the cases are of no help to the court in the situation at bar. Each dealt with acknowledgment under a statutory scheme requiring private examination by a third party of a wife as party to the granting of real property. *See Hatcher v. Hatcher*, 127 N.C. 200 (1900); *Wittkowsky v. Gidney*, 124 N.C. 437 (1899); *Hughes v. Hodges* 102 N.C. 262 (1888). Private examination was intended as protection for the wife, *see Butler v. Butler*, 169 N.C. 584 (1915), but was later repealed by statute as it appears to have been similarly repealed in other states. *See Dunn v. Pate*, 334 N.C. 115 (1993). To this end, other states' statutory schemes offer little interpretive assistance. The application of N.C. Gen. Stat. § 39-9, then, appears to also effectively be one of first impression.

8

Finding no guidance from the case law, the court is reminded that in interpreting any statute, the court must have first look to the language of the statute. *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004). The words of N.C. Gen. Stat. § 39-9 give advice for the situation at bar:

> When an instrument purports to be signed by a husband and wife the instrument may be ordered registered, if the acknowledgment of the husband is duly taken, but no such instrument shall be the act or deed of the wife *unless proven or acknowledged by her according to law*.

N.C. Gen. Stat. § 39-9 (emphasis added).

The Deed of Trust purports to be signed by both Mr. and Mrs. Mullaney—both of their signatures appear on it. There is no question that Mr. Mullaney's signature has been properly acknowledged. The sole impediment to the registration of the Deed of Trust and thus its validity, is whether Mrs. Mullaney's signature has been "proven or acknowledged by her according to law." The language does not set forth proper acknowledgment by a notary of the wife's signature as the only means of compliance. The signature may be proven or acknowledged by her according to law. Therefore, the court may receive evidence of her signature by affidavit, or her oral evidence through either direct or cross-examination testimony. The Defendants should therefore not be prohibited from eliciting such "proof" or "acknowledgment" from Mr. Mullaney at trial, rendering a motion to dismiss inappropriate.

The court will continue to adhere to a policy of flexibility with regard to the interpretation of the Notarial Act, while still following the dictates of North Carolina's policy of protecting spouses in the execution of legal documents. This can be accomplished by following the express language of N.C. Gen. Stat. § 39-9 and allowing proof on the issue of execution.

Inasmuch as the Deed of Trust's validity is a threshold issue, the Defendants' three remaining counterclaims are dependent upon its resolution. The Defendants specifically plead each of the aforementioned counterclaims in the alternative to their first counterclaim concerning the Deed of Trust's validity, such that it would be improper for the court to address them at this point in the

9

proceeding. Accordingly, the Plaintiffs' motion to dismiss counterclaims two, three, and four shall be held in abeyance until the first counterclaim is adjudicated.

The Defendants' affirmative defenses are similarly dependent on the resolution of the validity of the Deed of Trust. It would be premature, then, for the court to address the defenses at this point in the proceeding. Therefore, the Plaintiffs' motion to strike all affirmative defenses shall be held in abeyance until the first counterclaim is adjudicated.

## CONCLUSION

Based on the foregoing, the Plaintiffs' motion to dismiss the Defendants' first counterclaim is **DENIED**. The Plaintiffs' motion to dismiss all other counterclaims and motion to strike are hereby **HELD IN ABEYANCE** pending an evidentiary hearing.

### END OF DOCUMENT