**SO ORDERED.**

**SIGNED this 11 day of April, 2019.**

_____
**Stephani W. Humrickhouse
United States Bankruptcy Judge**

_____

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILMINGTON DIVISION**

| | |
|---|---|
| **IN RE:** | **CASE NO.** |
| **DAVID DUNN MULLANEY and ELISE HUMPHREYS MULLANEY,** | **17-02594-5-SWH** |
| **DEBTORS** | |
| **DAVID DUNN MULLANEY and ELISE HUMPHREYS MULLANEY,** | **ADVERSARY PROCEEDING NO.** |
| | **17-00039-5-SWH** |
| **Plaintiffs,** | |
| **v.** | |
| **BANK OF AMERICA, N.A. and CITIMORTGAGE, INC.,** | |
| **Defendants.** | |

**ORDER REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT**

The matters before the court are cross-motions for summary judgment filed by the chapter 11 debtors and plaintiffs, David Dunn Mullaney and Elise Humphreys Mullaney (D.E. 37), and by defendants Bank of America, N.A. and CitiMortgage, Inc. (D.E. 35). Both motions were filed on December 12, 2018, and responsive memoranda subsequently were filed by both plaintiffs (D.E. 47)

and defendants (D.E. 48). A hearing was held in Wilmington, North Carolina on January 17, 2019, after which the court took the matter under advisement. On March 28, 2019, the court entered a short order which provided that for reasons to be more fully set forth in an opinion to follow, plaintiffs' motion for summary judgment on the 11 U.S.C. § 544(a) claims was denied and defendants' motion for summary judgment on the § 544(a) claims was allowed, which disposition mooted defendants' counterclaims. Those reasons are set forth below.

## FACTUAL AND PROCEDURAL BACKGROUND

In May of 2006, David and Elise Mullaney (collectively, "plaintiffs") contracted to purchase real property located at 2109 Auburn Lane, Wilmington, North Carolina ("the Property"). At that time, plaintiffs were residents of Alexandria, Virginia. To fund the purchase, plaintiffs obtained two loans; one in the principal amount of $527,500.00 from ABN AMRO Mortgage Group ("ABN AMRO"), now held by defendants Bank of America, N.A. and CitiMortgage, Inc. as successors in interest to ABN AMRO (referred to herein as the "Bank of America loan"), and the other in the principal amount of $350,000.00 from Wells Fargo (the "Wells Fargo loan"). It is the deed of trust securing the Bank of America loan that is specifically at issue here. Preparation of the closing documents for the Property was handled by North Carolina attorney Steven Siegel, who compiled the documents for both loans, and then conveyed them to the plaintiffs' home in Alexandria.[1]

---

[1] Only the deed of trust executed in connection with the Bank of America loan (the "Deed of Trust") is at issue here, and the parties do not dispute the validity of the Wells Fargo deed of trust. Both deeds of trust were executed as part of the same transaction to purchase the Property; thus, the factual circumstances surrounding the execution of both documents (as well as many other documents that were part and parcel of the Mullaneys' purchase of the Property) are material here.

The Wells Fargo loan is evidenced by a note executed by both David and Elise Mullaney. Both Mullaneys are grantors on the deed of trust. The uncontested evidence, including the documents themselves (the "Wells Fargo documents"), is that both Mr. and Mrs. Mullaney signed and initialed these documents in the designated places. Their signatures were acknowledged in notarial certificates by Hyun Ah Park, who was at that time a notary licensed in the Commonwealth of Virginia, employed by SunTrust Bank. All of the initials or signatures affixed by Mr. and Mrs. Mullaney to the Wells Fargo documents are dated May 22, 2006, and Ms. Park's notarial acts in connection with the Wells Fargo documents are dated May 22, 2006. These acts consisted of affixing her notarial seal to the Borrowers' Affidavit, the Correction Agreement Limited Power of Attorney, and the Open-Ended Deed of Trust. D.E. 35-2 (Affidavit of (closing attorney) Steven F. Siegel with attached exhibits) at pp. 70-71 (Ex. 23), 72-73 (Ex. 24), 81-93 (Ex. 28). Each of the documents including the notarial certificate of acknowledgment by Ms. Park also includes the typewritten names of *both* David Mullaney and Elise Mullaney.

The Bank of America loan is evidenced by a note executed by only David Mullaney. Though Mr. Mullaney was the sole borrower on the loan, both Mullaneys were grantors on the Deed of Trust. As prepared by Bank of America, all of the loan documents evidencing the note and Deed of Trust included only Mr. Mullaney's name as a grantor, including the Signature Affidavit, which required the borrower to execute a signature affidavit and "AKA statement" and for the notary public to complete a notarized "Acknowledgment of Borrower Identity." *Id*. at 29 (Ex. 14). The signature and initials of Mr. Mullaney appear throughout the loan and related documents, all dated as of May 22, 2006. The signature and initials of Mrs. Mullaney also appear in some of these documents, including on the Deed of Trust, all dated as of May 22, 2006. Other than Mr.

3

Mullaney's Signature Affidavit in connection with the underlying loan, the Bank of America documents required only one other signature page to be notarized, that being the final page (page 9) of the Deed of Trust.

On the Deed of Trust, attorney Seigel's office added Mrs. Mullaney's name as a grantor by typing it into the document in four places, three of which also required her accompanying signature: On the first page (page 1 of 9) as a "Borrower," and on the last page (page 9 of 9), along with a (seal) signature line; on the appended Planned Unit Development Rider (page 2 of 2), along with a (seal) signature line, and on the appended Adjustable Rate Rider (page 3 of 3), also with a (seal) signature line. *Id.* at 40, 48, 50, 53 (Ex. 19). Mrs. Mullaney's signature appears on all three signatures lines, and she testified in her deposition that the signatures on the Deed of Trust and appended documents are, in fact, her signatures. Mr. Mullaney's name appears in these same places, along with his signature.[2]

In a nutshell, Mrs. Mullaney's deposition testimony simply confirms that she and Mr. Mullaney borrowed money to effectuate the purchase of the Property, pursuant to which it was necessary to sign many documents. She testified that she has no specific recollection of physically signing *any* of the documents necessary to close on either of the two loans, but has no reason to believe she did not sign the appropriate documents. Instead, to the contrary, Mrs. Mullaney testified that she "absolutely" believes that she did sign them. D.E. 35-6 at 11-12, 17-18.

---

[2] The court is well aware of plaintiffs' position that there is no proof that Mrs. Mullaney signed this document in the presence of the notary, Hyun Ah Park, and that plaintiffs may take exception to a factual recitation that includes the unqualified statement that Mrs. Mullaney *signed the Deed of Trust*. As will be more fully discussed below, however, Mrs. Mullaney testified that these signatures *are*, in fact, her signatures; that material fact is not disputed.

4

The catalyst for the instant motion is the omission of Mrs. Mullaney's name on page 9 of the Deed of Trust, within the notarial certification block itself, which is set out below the typed names and signatures of both David and Elise Mullaney. The uppermost part of that block indicates the state in which the certification is made, and in it, Mr. Seigel's office made a correction by typing over/crossing through the words "North Carolina" and replacing them with the word "Virginia." Within the block itself, an additional reference to the "State of North Carolina" appears. This was not corrected by Mr. Seigel's office, and instead has been marked through by hand, with the word "Virginia" written underneath. The block includes underlined and otherwise blank spaces in which the notary, Hyun Ah Park, entered her name, the county (Arlington), and the date (May 22, 2006). Mr. Mullaney's name was typed into the block by ABN AMRO as the individual who "personally appeared before" the notary. Mrs. Mullaney's name is not typed into the block (there is no additional space in proximity to Mr. Mullaney's name in which to do so), nor was it written in or otherwise added to the notary block. Mr. Mullaney's typewritten name is almost obscured by application of the notarial seal. The notarial certificate otherwise includes the same information as the notarizations in the Wells Fargo documents; *i.e*. Ms. Park's name and signature, the date, the county and state, the expiration of her commission, and the notarial seal.

The signed documents were returned to Mr. Seigel, all monies were deposited and disbursed per the agreements, and the Mullaneys completed their purchase of the Property. Both deeds of trust were recorded. The Wells Fargo deed of trust was recorded on May 23, 2006, in the New Hanover County Registry at Book 5025, Page 1652-1655. The Bank of America deed of trust (the "Deed of Trust") also was recorded on May 23, 2006, in the New Hanover County Registry, at Book 5025, Page 1656-1670. Subsequently, the Mullaneys borrowed additional funds in the principal amount

of $454,000, as evidenced by a promissory note in favor of Citibank, N.A., dated March 24, 2008. That obligation is secured by a deed of trust (the "2008 deed of trust") on the Property, recorded on April 10, 2008 in the New Hanover County Registry, at Book 5300, Page 1230.

On August 12, 2015, Mr. Mullaney filed a voluntary petition under chapter 7 of the Bankruptcy Code. Mr. Mullaney listed the Property on his Schedule A, and in Schedule D, he listed CitiBank, N.A., represented by Bank of America, N.A., as the holder of a deed of trust and home equity line of credit on the Property, securing a note with a balance as of the petition date of $453,410.72. In addition, Mr. Mullaney listed defendant CitiMortgage, Inc. as the holder of the Deed of Trust on the property in the amount of $430,413.00. Bankr. Case No. 15-04409-5-SWH, D.E. 1 at 29 (Schedule D). Mr. Mullaney did not challenge the validity of the Deed of Trust in that case, and instead indicated his intention to retain the property and continue to make payments as to both obligations. *Id.* at 31 (Chapter 7 Individual Debtor's Statement of Intention). CitiMortgage did not file a claim, though it did file a motion for relief from stay, which it later withdrew. Mr. Mullaney received a discharge on October 11, 2016, and a final decree was entered in the chapter 7 case on February 14, 2017.

On May 26, 2017, Mr. and Mrs. Mullaney filed a joint petition under chapter 11 and also initiated this adversary proceeding. In the bankruptcy case, the Mullaneys listed the Property as being held as a joint tenancy by the entireties with a present value of $849,700. Defendant CitiMortgage, the servicer of the Deed of Trust as of the petition date, is listed as having a disputed claim secured by the property in the amount of $491,250.15. In their Schedule D, plaintiffs noted that "[o]nly the Male Debtor signed the underlying promissory note. That obligation was discharged

6

in the Male Debtor's prior Chapter 7." Bankr. Case No. 17-02594-5-SWH, D.E. 1 at 43 (plaintiffs' chapter 11 petition). On August 23, 2017, defendants filed a claim in the amount of $501,267.36.

In the adversary proceeding, plaintiffs seek to avoid the Deed of Trust under 11 U.S.C. §§ 544(a)(1) and (3), contending that the Deed of Trust "does not contain an acknowledgment of the female debtor," and further that "[n]owhere in the First Deed of Trust is there an acknowledgment by the female debtor, nor did a notary notarize the female debtor's signature. The female debtor does not recall signing the First Deed of Trust."[3] D.E. 1 at 3-4. Plaintiffs maintain that under North Carolina state law (specifically, under N.C. Gen. Stat. §§ 39-9, 39-13.6(a), 47-17, 47-20(a), and 47-40), for a lien on property held by the entireties to have priority against a judicial lien creditor or a bona fide purchaser, it must be perfected as to both male and female debtors and, in addition, "no such instrument shall be the act or deed of the wife unless proven or acknowledged by her according to law." *Id* at 5.

Defendants' answer to the complaint included a number of affirmative defenses and was accompanied by counterclaims asserting multiple theories of recovery. On August 31, 2017, plaintiffs filed a motion to dismiss the defendants' counterclaims and to strike defenses. In an order denying that motion, *Mullaney v. Bank of America, N.A. (In re Mullaney)*, 2018 WL 2223073 (Bankr. E.D.N.C., May 15, 2018), this court concluded:

---

[3] The complaint also references the 2008 deed of trust in favor of CitiBank, which it identifies as the "Second Deed of Trust." The 2008 CitiBank loan and deed of trust may have taken out the 2006 Wells Fargo loan and deed of trust, though the court is unsure; regardless, neither of those transactions are before the court. The complaint does not otherwise reference the Wells Fargo deed of trust and accompanying documents, which were executed contemporaneously with the Deed of Trust in 2006 as part of the original purchase of the Property.

>The Deed of Trust purports to be signed by both Mr. and Mrs. Mullaney – both their signatures appear on it. There is no question that Mr. Mullaney's signature has been properly acknowledged. The sole impediment to the registration of the Deed of Trust and thus its validity, is whether Mrs. Mullaney's signature has been "proven or acknowledged by her according to law." The language does not set forth proper acknowledgment by a notary of the wife's signature as the only means of compliance. The signature may be proven or acknowledged by her according to law. Therefore, the court may receive evidence of her signature by affidavit, or her oral evidence through either direct or cross-examination testimony. *The Defendants should therefore not be prohibited from eliciting such "proof" or "acknowledgment" from [Mrs.] Mullaney at trial, rendering a motion to dismiss inappropriate*.
>
>The court will continue to adhere to a policy of flexibility with regard to the interpretation of the Notarial Act, while still following the dictates of North Carolina's policy of protecting spouses in the execution of legal documents. This can be accomplished by following the express language of N.C. Gen. Stat. § 39-9 and allowing proof on the issue of execution.

2018 WL 2223073 at *5 (emphasis added). Neither party raised a choice of law issue, and the court applied North Carolina state law. *Id.* at *5 n.1. After entry of that order, the parties undertook and completed discovery, then filed the instant cross-motions for summary judgment, to which the court now turns.

## DISCUSSION

Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure, governs the grant or denial of a motion for summary judgment. Fed. R. Civ. P. 56; Fed. R. Bankr. P. 7056. The court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment is not a "disfavored procedural shortcut," but an important mechanism for filtering out baseless claims and defenses. *Celotex*, 477 U.S. at 327.

Here, because both parties have moved for summary judgment, satisfaction of the appropriate burden of proof will shift according to the perspective from which the evidence is viewed. A moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact, *id.* at 323, and the court views all facts and inferences to be drawn from those facts in the light most favorable to the nonmoving party. *United States v. Diebold*, 29 U.S. 654, 655 (1962) (per curiam). However, in making that determination, the "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing Fed. R. Civ. P. 56 (c)). As the *Scott* Court explained:

> As we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c) its opponent must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (footnote omitted). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.E.2d 202 (1986). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Scott*, 55 U.S. at 380. In addition, the "mere existence of a scintilla of evidence" in support of the nonmoving party's position will not defeat a motion for summary judgment; instead, "there must be evidence on which the [fact finder] could reasonably find for the [nonmoving party]." *Anderson*, 477 U.S. at 252. Here, in construing the plaintiffs' motion for summary judgment, the plaintiffs as

9

movants have the burden of establishing, based upon the evidence of record and with the court construing that evidence in the light most favorable to defendants, that the Deed of Trust is invalid.[4]

If the Deed of Trust is valid under North Carolina law, then it is not avoidable under either § 544(a)(1) or § 544(a)(3). The attack on the validity of the deed of trust is based upon the fact that while Mr. Mullaney's name appears in the notarial acknowledgment on that instrument, Mrs. Mullaney's name does not. That fact (referred to herein, for ease of reference, as "the omission") is not in dispute. The parties disagree about the *legal implications* of the omission. Plaintiffs argue that

> [w]hether Mrs. Mullaney acknowledged and signed the Deed of Trust in front of a notary or other authorized officer is *not apparent from the recorded Deed of Trust, or any other document filed in the New Hanover County Registry*. Section 544 (a) states, "The trustee shall have ... without regard to any knowledge of the trustee or any creditor." Because the acknowledgement [sic] of Mrs. Mullaney does not appear on the recorded Deed of Trust, the Deed of Trust does not exist–nor provide constructive notice–against a judicial lien creditor, or a bona fide purchaser of the Real Property. As the Debtors-in-Possession have no actual knowledge under the statute, the Deed of Trust must be avoided under 11 U.S.C. §§ 544(a)(1) and (a)(3).

D.E. 37 at 3 (emphasis added). Based upon the omission, plaintiffs reach the affirmative conclusion that "Mrs. Mullaney *did not acknowledge* the Deed of Trust of the Defendants – therefore the Deed of Trust is not a valid lien against the Real Property of David and Elise Mullaney." *Id.* at 40 (emphasis added).

Defendants, responding and in their own motion for summary judgment, maintain that the undisputed evidence establishes that Mrs. Mullaney signed the Deed of Trust and a number of related documents in the presence of Notary Park, and, further, that the evidence cannot support any

---

[4] In construing the defendants' motion, that burden of course is flipped. Defendants would be obliged to establish that, based on the evidence of record and with that evidence construed in the light most favorable to plaintiffs, the deed of trust *is* valid.

other conclusion. The omission of her name in the preprinted notary block is a scrivener's error, defendants argue, which does not invalidate or otherwise undermine the Deed of Trust. Defendants further point out that there is no evidence of any irregularity in connection with the omission, or in the multiple other notarial acts of Notary Park, which included her certification of Mrs. Mullaney's signature on three Wells Fargo documents, at the same time and in connection with the Property purchase. Under these circumstances, defendants argue, the notarial certification is proper under the laws of Virginia and North Carolina, and the inadvertent omission of Mrs. Mullaney's name cannot, and does not, invalidate the Deed of Trust.

**I.      Law Applicable to Notarial Certification**

Under North Carolina law, to be valid, a deed of trust must be acknowledged. N.C. Gen. Stat. § 47-17. Execution of such an instrument must be "proved or acknowledged before an officer with the apparent authority to take proofs or acknowledgments, and the proof or acknowledgment includes the officer's signature, commission expiration date, and official seal, if required." N.C. Gen Stat. § 47-14(a). Plaintiffs contend that due to the omission, the Deed of Trust should not have been accepted for registration, and that "[r]egistration of an instrument pursuant to N.C. Gen. Stat. § 47-14 *is not effective* with regard to parties 'whose execution thereof have not been duly proved or acknowledged.'" D.E. 37 at 12-13 (emphasis added), *quoting* N.C. Gen. Stat. § 47-14(d).

North Carolina law further provides that when a document is notarized in another state, the sufficiency of the notarial certification may be determined with reference to the laws of that state and "federal law." Specifically, "[a]ny notarial certificate made in another jurisdiction shall be sufficient in this State if it is made in accordance with federal law or the laws of the jurisdiction where the notarial certificate is made." N.C. Gen. Stat. § 10B-40(e). The Deed of Trust was

11

notarized in Virginia. Thus, the threshold question of whether the notarial certificate itself constitutes a proper and valid acknowledgment, is a matter of Virginia law.

## II.     Sufficiency of Notarial Certification

Ultimately, defendants frame the question before the court as whether the inadvertent omission of a grantor's name from the notarial certificate renders the Deed of Trust invalid. Plaintiffs characterize the issue differently, and argue that the Deed of Trust "is defective *because it lacks Mrs. Mullaney's acknowledgment*, not because of an insufficient notarial certificate." D.E. 47 at 10 (emphasis added). Taking it one step further, in plaintiffs' view, there is "no admissible evidence to prove Mrs. Mullaney acknowledged the Deed of Trust in front of a notary, only Defendants' assumptions." *Id.* at 9. The court agrees with defendants' characterization of the issue before the court.

In May of 2006, when the Deed of Trust was signed, a notarial act was required to include five of the seven traditional items of information that presently are required, as outlined in Virginia's Notary Public Handbook[5]:

> **REQUIRED INFORMATION WHEN NOTARIZING A DOCUMENT**–
> (§ 47.1-2, § 47.1-15, § 47.1-16)
>
> Every notarial act must contain seven[6] items of TRADITIONAL information:
> 1. Notarial statement
> 2. The date of the notarial act
> 3. The location of the notarial act in the city or county where notarization occurs

---

[5] As described by the Supreme Court of Virginia, this "handbook for notaries public [is] prepared and published by the Secretary of the Commonwealth pursuant to Code § 47.1-11," and provides, among other things, suggested forms and procedures for acknowledgments. *Cumbee v. Myers*, 350 S.E.2d 633, 634 (Va. 1986).

[6] The Handbook provides that items six and seven were not required of notarial acts performed prior to July 1, 2007 and July 1, 2008, respectively. Both of these items of information are, however, included on the Deed of Trust.

      4. The expiration date of the notary's commission
      5. Notary's signature
      6. Notary's registration number
      7. Photographically reproducible notary seal/stamp

D.E. 35-11 at 3. The "notarial statement" is required to "identify the specific notarial act that has been performed (acknowledgment, true copy of an original document, etc.)." *Id*. Virginia law does not require a notarial certificate to state the name of the signing party, except in certain circumstances: "Every effort should be made for the notarial statement to be on the same page as the signature being notarized, however, *if they are on different pages*, the notarial statement must include the name of the person whose signature is being notarized." *Id.* Here, the notarial statement is on the same page, located immediately beneath the signatures of Mr. and Mrs. Mullaney. Defendants maintain that the acknowledgment complies with applicable Virginia law, such that under N.C. Gen. Stat. § 10B-40(e), it is deemed compliant with North Carolina law. From that vantage point, defendants conclude, there is no deficiency with the Deed of Trust, such that it always has been, and remains, a valid first lien on the Property.

     Plaintiffs counter that under Virginia law, just as under North Carolina law, "an acknowledgment means an individual appears before the notary *and* provides satisfactory evidence of identity, like a U.S. Passport Book, state issue driver's license or U.S. military card." D.E. 47 at 10, citing Va. Code Ann. § 47.1-2 (definition "satisfactory evidence of identity"), N.C. Gen Stat. § 10B-3(1). According to plaintiffs, the notarial certificate does not comply with Virginia law because there is no evidence in the record that Mrs. Mullaney appeared before Notary Park and presented evidence of her identity. *Id.* at 5, 10-12; D.E. 37 at 10. The court disagrees: There is no dispute that on the same date, in the same place, Mrs. Mullaney authenticated her signature on the Wells Fargo loan documents multiple times, each of which was notarized by Notary Park.

Plaintiffs' position is entirely dependent on the undisputed fact that neither Ms. Park nor Mrs. Mullaney have any current recollection of the circumstances under which Mrs. Mullaney signed and initialed the closing documents, and Ms. Park notarized them.  Plaintiffs urge the court to conclude from this that Mrs. Mullaney failed to provide the basic identification that is required as part of the process.  That, obviously, assumes the truth of facts not in evidence and also would require this court to reach conclusions that either contradict the uncontested evidence, or, are wholly unsupported by it.  First, the court would need to turn a blind eye to the existence of the Wells Fargo deed of trust, which was part of the same overall transaction as the Deed of Trust *and bears Mrs. Mullaney's unchallenged and authenticated signature in three separate places – with each signature being notarized by Ms. Park*.  And, the court would be required to accept, based on no evidence at all, that Ms. Park improperly executed her notarial duties and did not obtain the required identification from Mrs. Mullaney.

A component of any notarial certification in Virginia (and North Carolina) is the notary's verification of the person's identity, which can be based either on personal knowledge, or upon the presentation of satisfactory identification.  Ms. Park testified that she "always" required a showing of identification, and there is no suggestion that she failed to do so in this instance, when the evidence establishes that it certainly would have been required: Mrs. Mullaney testified that she did not personally know Ms. Park, and Ms. Park likewise testified that she did not personally know either Mr. or Mrs. Mullaney.  There is no challenge to Ms. Park's verification of Mr. Mullaney's identity, perhaps because the defendants' closing documents included among them a "Signature Affidavit" that Mr. Mullaney, as the borrower, was required to execute and which included an "Acknowledgment of Borrower Identity" section completed and notarized by Ms. Park.  On the

14

Bank of America loan, Mrs. Mullaney was not a borrower, and no "Signature Affidavit" was prepared for her; while both Mullaneys were borrowers on the Wells Fargo loan, those closing documents do not include a document upon which a notary is to record the form of identification presented by a signing party. In sum, the existence of a written and notarized recitation of the identification presented on behalf of Mr. Mullaney neither requires nor supports the inference that appropriate identification was not presented by Mrs. Mullaney, for whom, as a non-borrower on the Bank of America loan, no comparable document was prepared.

The court has been careful to take the most narrowly drawn view of the facts before it in order to rely only on those that are both undisputed and admitted into evidence in connection with these motions. Having done so, it is apparent to the court that the conclusions drawn by plaintiffs go too far. As was discussed above, *all* of the available and admissible evidence – including, most notably, the deposition testimony of Mrs. Mullaney and the documents themselves – is, *at a minimum* (and for present purposes the court is construing all evidence in the light most favorable to plaintiffs), consistent with Mrs. Mullaney signing the document in the presence of the notary, Ms. Park.

Here, the court is not forecasting what it would do if there were *not* another deed of trust bearing a notarial certificate which indicates that Mrs. Mullaney appeared before Notary Park in the same place, on the same day, as part of the same transaction. Moreover, there is *no* evidence before the court to the contrary. There is no evidence that somehow, in the process of signing the documents necessary to obtain the loans sought by both Mr. and Mrs. Mullaney, some hypothetical error was made, such that the process somehow "went wrong" in an unspecified way, with the result being that Mrs. Mullaney's signature on this particular page was, unlike her other signatures

notarized by Ms. Park, improperly acknowledged. Plaintiffs seek to have it both ways – to emphasize the many reasons why it is necessary to have a properly acknowledged – *i.e.*, unassailable – signature on a deed of trust, while simultaneously seeking to go behind the notarial certification to suggest hypothetical, conceptual challenges to its sufficiency. This effort is not supported by the evidence. Defendants have met their burden under Rule 56(c), and plaintiffs are relying upon precisely the kind of "metaphysical doubt" that the *Matsushita* Court warned against. *See Matsushita Elec.*, 475 U.S. at 587. Here, the factual issue of whether Mrs. Mullaney signed the Deed of Trust before a notary is one that the trier of fact would necessarily determine in the affirmative.

Finally, briefly turning to the policy behind the specific notarial requirements, those policies make evident to the court that under either Virginia or North Carolina law, the acknowledgment on the Deed of Trust is sufficient. It is the policy in Virginia to "'look with great leniency on certificates of acknowledgment, to uphold them if possible, and to disregard obvious technical errors in such acknowledgments.'" *Cumbee v. Myers*, 350 S.E.2d 633, 634 (Va. 1986), quoting *Blair v. Rorer's Amd'r,* 116 S.E. 767, 775 (Va. 1923), *error denied*, 262 U.S. 734 (1923). As the *Cumbee* court explained, "a substantial compliance with the acknowledgment statute is all that is required." *Cumbee*, 350 S.E.2d at 634. Further, "'if it is reasonably certain that the grantor made the acknowledgment of the instrument in question that is sufficient.'" *Id.*, quoting *Blair,* 116 S.E. at 775. This is so because "'[t]he object of the statute is that the notary ... shall know and certify that the person whose name is signed to the instrument is the person who is acknowledging it." *Building & Loan Ass'n v. Roane*, 140 S.E.2d 823, 824 (Va. 1965), *quoted in Cumbee*, 350 S.E.2d at 634; *see also R.G. Griffith, Inc. v. Great Falls West Assoc.*, 1991 WL 834969 *1 (Cir. Ct. of Va., Fairfax Co.

1991) (upholding validity of notarial certificate that wrongly identified mechanic's lien claimant after reviewing the document "as a whole" and determining that "substantial compliance with the verification requirement has been met").

The same approach holds true in North Carolina, where the state courts (and thus, for present purposes, this court)

> strongly advocate a liberal interpretation of the statutes, in order that acknowledgments may be upheld whenever there has been a substantial compliance with the law and no suspicion of fraud or unfairness attaches to the transaction.... *Acknowledgments also are aided by the presumption that public officers do their duty, and in further support of the officer's certificate resort may be had to the instrument acknowledged.* (Quotations and citation omitted.) The courts uniformly give to certificates of acknowledgment a liberal construction, in order to sustain them if the substance be found, and the statute has been substantially observed and followed.

*In re AbdalQader*, 2013 WL 5354546 *6 (Bankr. E.D.N.C., Sept. 23, 2013) (emphasis added), quoting *Freeman v. Morrison,* 199 S.E. 12, 14 (N.C. 1938) (citations omitted); *see also In the Matter of Hess*, 407 S.E.2d 594, 595 (N.C. App. 1991) (quoting *Freeman*). In *AbdalQader*, this court conducted an extensive survey of North Carolina law on this very topic, and ultimately concluded that "North Carolina courts would not find a properly executed and recorded deed of trust invalid based solely on the omission of the grantor's name from the notary's otherwise compliant acknowledgment." *AbdalQader*, 2013 WL 5354546 *6. In the court's view, the sufficiency of the acknowledgment under Virginia state law makes it unnecessary to inquire into what would happen if the courts of this state were required to analyze that acknowledgment: It is apparent, however, that were they to do so, the acknowledgment would pass muster under the liberal construction extended by North Carolina courts.

17

**I.      Applicability of Section 544(a)**

If the Deed of Trust is valid without reformation, it can withstand a § 544(a) challenge. Because the court has determined that Mrs. Mullaney validly acknowledged her signature on the Deed of Trust, and that the Deed of Trust was and is valid, there is no basis upon which plaintiffs could avoid it under either 11 U.S.C. §§ 544(a)(1) or (3). Section 544 extends to a trustee or chapter 11 debtor-in-possession certain strong arm powers that come into effect as of the commencement of the case and enable the trustee or debtor-in-possession to avoid an obligation of the debtor under certain circumstances. In relevant part, it provides:

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by–
> (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;
> * * *
> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfers at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. §§ 544(a)(1), (3).

With regard to § 544(a)(1), plaintiffs contend that as debtors-in-possession, they have the standing of a judicial lien creditor without regard to any knowledge, and thus "stand 'in the position of a hypothetical judgment lien creditor on the petition date, with priority over unperfected security interests *as of the petition date*.'" D.E. 37 at 10, *quoting Bank of America, N.A. v. Gallo (In re Gallo)*, 539 B.R. 88, 92 (Bankr. E.D.N.C. 2015). Of course, for that argument to prevail, plaintiffs must establish that by reason of the omission, the Deed of Trust was *not* a perfected security interest

as of the petition date. As discussed above, there is insufficient evidence to cast the necessary doubt on Mrs. Mullaney's acknowledgment of the Deed of Trust; instead, the admissible and uncontested evidence of record is wholly consistent with defendants' position, which is that the Deed of Trust was appropriately acknowledged when executed. Under that same reasoning, the Deed of Trust is not avoidable pursuant to § 544(a)(3).[7]

The court is not forecasting here what it would decide if there were *not* another deed of trust executed on the very same day, with the same parties, as to the same property, and recorded alongside the challenged Deed of Trust. Rather, it appears to the court that on the undisputed facts before it, and under application of Virginia and then North Carolina state law, plaintiffs could not successfully avoid the Deed of Trust even if they did assume the status of a hypothetical lien creditor under § 544(a)(1); nor could they avoid the Deed of Trust as bona fide purchasers, under

---

[7] The Court of Appeals for the Fourth Circuit held, in *In re Hartman Paving Inc.*, 745 F.2d 307, 309 (4th Cir. 1984), that "a debtor-in-possession, acting as a bona fide purchaser pursuant to Section 544(a)(3), cannot invalidate a deed of trust where he is an original party to the deed of trust and had actual notice of its existence." *In re Law Developers, LLC*, 404 B.R. 136, 139 (Bankr. E.D.N.C. 2008) (interpreting *Hartman* and concluding that "[a] debtor-in-possession with notice of the deed of trust is not 'innocent' and therefore cannot prevent reformation of the deed of trust under North Carolina law").

Thus, even if the Deed of Trust had been invalid or otherwise compromised by reason of a flawed acknowledgment, it appears likely to the court that avoidance under § 544(a)(3) would be unavailable to plaintiffs. It is undisputed that both Mr. and Mrs. Mullaney had knowledge of the Deed of Trust and the mortgage obligation secured by it. Mrs. Mullaney testified that her signature appears on the Deed of Trust in multiple places, including in the challenged notarial block, and further that she "absolutely" believed that she signed the appropriate documents necessary to effectuate that purchase.

The court also is aware that the *Hartman Paving* decision is something of an outlier among the circuit and bankruptcy courts. *See, e.g., In re Taylor-Ramsey Corp.*, 458 B.R. 270, 273-74 (Bankr. M.D.N.C. 2011) (discussing *Hartman* and citing cases); *In re Alexander*, 2014 WL 3511499 *7-9 & n.6 (Bankr. E.D. Va. 2014) (same). In light of the court's conclusion that the challenged notarial certification is valid, it in not necessary for the court to reach and decide the question of whether, on these facts, plaintiffs, as debtors in possession, could possibly stand in the shoes of a bona fide purchaser under § 544(a)(3).

§ 544(a)(3).  *See, e.g., Willows II, LLC v. BB&T (In re Willows II, LLC)*, 485 B.R. 528, 532-538 (Bankr E.D.N.C. 2013);  *In re Law Developers*, 404 B.R. 136, 139 (Bankr. E.D.N.C. 2008).

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is **ALLOWED** and plaintiffs' motion for summary judgment is **DENIED**.

**END OF DOCUMENT**